**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| CHARLES CALLAWAY | CIVIL ACTION NO. 24-1795 |
| VERSUS | JUDGE ALEXANDER C. VAN HOOK |
| CITY OF DERIDDER, ET AL. | MAGISTRATE JUDGE LEBLANC |

# MEMORANDUM RULING

The only defendant left, Sheriff Mark Herford ("Sheriff Herford"), filed a motion for summary judgment to dismiss the sole remaining claims of vicarious liability and negligence asserted by the plaintiff, Charles Callaway ("Callaway"). Record Document 30. For the following reasons, the motion for summary judgment is **GRANTED**, and all claims against Sheriff Herford are **DISMISSED WITH PREJUDICE**.

## Background

Following an arrest, Callaway was held at the Beauregard Parish Jail ("Parish Jail") in the custody of Sheriff Herford. Record Document 1 at 5. He remained incarcerated for about nine months. *Id.* During that time, according to Callaway, deputies at the Parish Jail denied him prescribed medication and basic medical care. *Id.* Callaway alleged in his complaint that he suffered multiple strokes and lost sight in one eye because the deputies withheld his medications. *Id.*

But Callaway has no proof that he suffered a stroke while incarcerated. In his deposition, Callaway admitted that he was "not a doctor" and did not "know whether

[his illness] was a stroke[.]" Record Document 30-5 at 6. Callaway also acknowledged that no medical professional determined that he "definitely had a stroke at any time during [his] time in jail." *Id.* at 5. Instead, Callaway testified that he assumed that he must have had adverse health problems because he did not receive medications while jailed. *Id.* at 6. The only evidence that Callaway has supporting a stroke even occurred is is his own testimony that a responding paramedic told him that Callaway "was having stroke symptoms." *Id.* at 5.

In fact, his medical records established that Callaway did not experience a stroke. For example, on March 5, 2024, a treating physician noted that Callaway's healthcare providers had initiated stroke protocol, but an MRI scan "was negative for [stroke]." Record Document 32-15 at 6. Then, again on May 24, 2024, a treating physician stated that a CT scan a few days earlier was "negative" for an ischemic stroke. Record Document 32-1 at 6.

As for his eye problems, Callaway said that he had undergone three corneal surgeries before his arrest on December 28, 2023. Record Document 32 at 2. Callaway represented in his briefing that the most recent surgery occurred "in the fall of 2023" but did not give a specific date or cite to a specific medical record. *Id.* In any event, Callaway asserted that he "suffered permanent loss of the healing progress in his left eye from post-operative drops that were denied." *Id.* To support this claim, Callaway offered four pages of medical records from an eye clinic, but other than conclusory statements, he did not explain their meaning. *See generally* Record Document 32-5.

Callaway, by his own admission, has a "complex medical history." Record Document 32-5 at 1. Since 2015, Callaway has endured at least five transient ischemic attacks, also known as "mini strokes," both before and after incarceration. Record Document 30-4 at 4, 6. He has been diagnosed with Parkinson's disease, chronic obstructive pulmonary disease, atrial fibrillation, multiple heart attacks, and prostate hyperplasia. Record Document 30-3 at 4, 6-9.

Callaway's medical records also show a history of eye problems unrelated to his incarceration. Callaway underwent multiple surgeries, and even before being jailed, Callaway's surgical eye grafts had failed at least once. Record Document 33-3 at 3. His medical providers noted that the grafts failed because Callaway did not take his post-operative steroid drops as prescribed. *Id.* On at least two occasions, including a visit just days before his arrest, Callaway's medical providers noted that he had not taken his medication and a prior surgical graft failed as a result. *See id.* at 1, 4.

After his alleged illnesses and injuries during custody, Callaway filed this lawsuit. Record Document 1. Callaway named Sheriff Herford as a defendant. *Id.* at 2. In his complaint, Callaway alleged that Sheriff Herford is vicariously liable under Louisiana law for the negligence of his employees who did not provide him with medications and caused him to suffer strokes and lose his eyesight. *Id.* at 8-9. This is the sole cause of action remaining. Callaway had also named three others, the City of DeRidder, Jayson Creech, and "unknown deputies," as defendants, but they have since been dismissed. Record Documents 11, 29. Now, Sheriff Herford has moved for summary judgment. Record Document 30.

**Standard**

Federal Rule of Civil Procedure 56(a) requires a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When the burden at trial will rest on the nonmovant, the movant need not produce evidence to negate the elements of the nonmovant's case; rather, it need only point out the absence of supporting evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant satisfies its initial burden, the nonmovant must demonstrate a genuine dispute exists by "going beyond the pleadings" and "designating specific facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). This burden requires more than metaphysical doubt, conclusory or unsubstantiated allegations, or a mere scintilla of evidence. *Id.*

**Analysis**

Although Callaway's federal claims have been dismissed, this Court has supplemental jurisdiction over his remaining state law claim. *See* 28 U.S.C. § 1367. In that claim, Callaway alleged that Sheriff Herford, through his employees, acted negligently under Louisiana law. Record Document 1 at 9. Because this Court is exercising its supplemental jurisdiction, Louisiana substantive law and federal procedural law applies. *See Songcharoen v. Plastic & Hand Surgery Assocs., P.L.L.C.*, 561 F. App'x 327, 332 (5th Cir. 2014).

In Louisiana, a negligence claim has five elements: duty, breach, cause in fact, legal cause, and damages. *Jack v. Evonik Corp.*, 79 F.4th 547, 556 (5th Cir. 2023).

Sheriff Herford focuses on one issue, causation, to argue that he is entitled to summary judgment. Record Document 38 at 1. He contends that Callaway has no proof that the alleged failure to provide medication caused Callaway's purported strokes and vision loss. *Id.* In response, Callaway focuses much of his briefing on other, irrelevant elements. For example, Callaway contends that issues of fact exist whether Parish Jail employees withheld his medication and whether Sheriff Herford had personal knowledge of that withholding. *See, e.g.*, Record Document 32 at 1. The Court does not address these arguments because Sheriff Herford relied on causation alone to justify summary judgment. Record Document 38 at 1.

Medical causation is an essential element of a negligence claim. *See, e.g.*, *James v. Lincoln Gen. Ins. Co.*, No. 09-727, 2011 WL 3610800, at *4 (W.D. La. Aug. 15, 2011) ("Indeed, under Louisiana law, a plaintiff in a tort action must prove every essential element of his case, including medical causation, by a preponderance of the evidence."). The Louisiana Supreme Court requires "expert medical testimony is required when the conclusion regarding medical causation is one that is not within common knowledge." *Jenkins v. Arbors on Lake Apartments*, 334 So. 3d 746, 749 (La. 2022). That rule is well settled. *James*, 2011 WL 3610800, at *4.

Callaway has not designated an expert witness, much less obtained expert testimony that withholding medication can cause a stroke or vision loss. Instead, Callaway contends that it is common knowledge that a person will suffer a stroke and vision loss if medication is withheld. Record Document 32 at 4. Callaway does not cite

any authority for this self-serving conclusion. *See generally id.* And the Court is not persuaded.

Louisiana courts have repeatedly held that proving harm related to prescription medications requires expert testimony. *See, e.g.*, *Guillory v. Dr. X*, 679 So. 2d 1004, 1009 (La. App. 3 Cir. 1996) ("[R]esolution of the instant case requires knowledge of the properties of certain medications as well as the appropriate response of a physician…[and] these subjects are beyond the expertise of laymen."); *Bozarth v. State of La. LSU Med. Ctr.*, 35 So. 3d 316, 325 (La. App. 1 Cir. 2010) (holding that "expert medical testimony is needed to decide the issue of causation" where "this matter requires knowledge of the properties of the anti-tuberculin medications[.]").

Courts have also found that establishing the medical cause of a mini stroke requires expert testimony. *See, e.g.*, *Moore v. DeJoy*, No. 18-12270, 2022 WL 444238, at *8 (E.D. La. Feb. 13, 2022) (explaining that to prove "whether [plaintiff's] working conditions caused her loss of reflexes and mini strokes…would require scientific, technical, and specialized knowledge beyond the knowledge of lay persons."); *Hutchinson v. Shah*, 648 So. 2d 451, 453 (La. App. 1 Cir. 1994) (noting that the plaintiff "failed to establish a prima facie case of medical causation [because] [h]e produced no expert medical testimony" that the alleged accident caused his stroke). Determining the cause of optical problems also requires expert testimony. *See, e.g.*, *Talbot v. Elec. Ins. Co.*, No. 17-299, 2018 WL 6274314, at *3 (M.D. La. Nov. 30, 2018) ("Since a retinal detachment is not a condition within common knowledge of a

layperson, the Court finds that Plaintiff is required to produce expert medical testimony in order to prove that his retinal detachment was caused by the subject matter accident.").

Here, the Court finds that whether withholding medication caused a mini stroke and a corneal graft failure is not within common knowledge. To start, Callaway alleged that he suffered a stroke and vision loss – substantial, complicated injuries. These are not the kinds of health problems with a commonly understood cause. *See, e.g.*, *Talbot*, 2018 WL 6274314, at *3 ("The conditions that courts have found to be 'common knowledge' tend to be more minor, more common, and more general in nature."). Moreover, Callaway has a complex medical history that includes significant health problems, including heart attacks, other strokes, vision surgeries, and Parkinson's disease. Record Document 32 at 1. A layperson could not know that Callaway's alleged stroke and vision loss could have resulted from withholding medication rather than one of these other maladies.

Callaway's other arguments against summary judgment also have no merit. First, Callaway attached "extensive medical records" of his treating physician as an exhibit and then made the conclusory claim that these records "establish causation without the formal retention of a separate litigation expert." Record Document 32 at 6. Callaway did not provide a pinpoint citation to support this assertion. Even though this Court had no obligation to search through the records on Callaway's behalf, it did so anyway. The medical records Callaway provided did not include a statement that the Parish Jail caused a stroke and vision loss by withholding medication. *Id.* In

fact, the medical records established that he did not have a stroke at all, *see, e.g.*, Record Document 32-11 at 2, and that he had a history of recurrent eye graft failures because of noncompliance with his medication schedule, unrelated to anything the Parish Jail did or did not do, *see, e.g.*, Record Document 32-5 at 3.

Second, Callaway asked to modify the scheduling order and permit him additional time to obtain an expert witness. *Id.* at 9. But Callaway did not even attempt to establish good cause. This litigation began almost two years ago, and the expert deadline passed several months ago. *See* Record Documents 1, 15. Callaway does not explain why he never obtained an expert, and he did not address any of the factors needed for good cause. *See Squyres v. Heico Co., LLC*, 782 F.3d 224, 237 (5th Cir. 2015) (holding that four factors determine whether there is good cause to modify a scheduling order). Without more, Callaway is not entitled to a modification of the scheduling order.

To conclude, because the medical cause of strokes and graft failures is not within common knowledge, Callaway needed expert testimony to survive summary judgment. *See, e.g.*, *Bordenave v. Delta Air Lines, Inc.*, No. 18-637, 2020 WL 377017, at *4 (M.D. La. Jan. 23, 2010) (granting summary judgment because "it was necessary for Plaintiff to employ expert testimony in this case to prove that Plaintiff's injuries were causally related to the accident at issue."). He has no such testimony. Therefore, Callaway failed to prove the causation element of his negligence claim, and Sheriff Herford is entitled to summary judgment.

## Conclusion

For the foregoing reasons, the Motion for Summary Judgment, Record Document 30, is **GRANTED**. All claims against Sheriff Herford are **DISMISSED WITH PREJUDICE**. A judgment consistent with this ruling will be issued.

**DONE AND SIGNED** at Shreveport, Louisiana, this 6th day of October, 2026.

ALEXANDER C. VAN HOOK
UNITED STATES DISTRICT JUDGE